UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA BENNETT; and JAMES BENNETT,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>CIELO HOMEOWNERS ASSOCIATION, INC.; THE JUDGE LAW FIRM—A LAW CORPORATION; JAMES JUDGE; DAVID MANGIKYAN; and DOES 1-10 inclusive,<br><br>　　　　　　　　　　　Defendants. | Case No.: 19-cv-2131-WQH-BLM<br><br>**ORDER** |

HAYES, Judge:

　　The matters before the Court are the Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 11) and the Motion to Set Aside Default (ECF No. 20) filed by Defendants Cielo Homeowner's Association, Inc., The Judge Law Firm, James Judge, and David Mangikyan.

**I.　BACKGROUND**

　　On November 6, 2019, Plaintiffs Pamela Bennett and James Bennett, proceeding *pro se*, filed a Complaint against Defendants Cielo Homeowner's Association, Inc. ("Cielo"), The Judge Law Firm ("TJLF"), TJLF attorney James Judge, TJLF attorney David

Mangikyan, and Does 1 through 10, inclusive. (ECF No. 1). On November 27, 2019, Defendants filed a Motion to Dismiss the Complaint. (ECF No. 7).

On December 18, 2019, Plaintiffs filed a First Amended Complaint ("FAC"), rendering Defendants' Motion to Dismiss the original Complaint moot. (ECF No. 9; *see* ECF No. 10). In the FAC, Plaintiffs allege that on December 17, 2008, Defendant Cielo mailed Plaintiffs "an accounting on [Plaintiffs'] delinquent HOA fees" and a request for payment. (ECF No. 9 ¶ 48). Plaintiffs allege that on April 17, 2009, Cielo recorded a Notice of Delinquent Assessment securing a lien on Plaintiffs' property.

Plaintiffs allege that on December 28, 2009, Cielo filed a complaint against Pamela "Bennet" in the Superior Court for the State of California, County of San Diego. (*Id.* ¶ 52). Plaintiffs allege that Cielo brought claims against Pamela "Bennet" for foreclosure of real property assessment lien and for damages for breach of covenant. (*Id.* ¶ 45). Plaintiffs allege that Cielo's Board of Directors passed a resolution to initiate the foreclosure action but did not pass a resolution to initiate the breach of covenant action.

Plaintiffs allege that Pamela Bennett filed a demurrer to Cielo's state court complaint. Plaintiffs allege that the state court denied the demurrer, and Pamela Bennett thereafter filed an answer. Plaintiffs allege that on September 20, 2010, Cielo filed a Form SDSC Civ. 012 to amend the state court complaint to correct Pamela Bennett's name. Plaintiffs allege that on September 27, 2010, the state court granted Cielo's request to amend the state court complaint. Plaintiffs allege, however, that Cielo checked the wrong box on the Form SDSC Civ. 012, so no change to Pamela "Bennet's" name was made. Plaintiffs allege that Cielo "never amended the complaint to correct the name nor did they file or serve[ ] an amended complaint." (*Id.* ¶ 56).

Plaintiffs allege that on July 23, 2012, Bank of America foreclosed on Plaintiffs' property, "essentially extinguish[ing]" Cielo's first cause of action for foreclosure of real property assessment lien. (*Id.* ¶ 57).

Plaintiffs allege that Defendants TJLF and attorneys James Judge and David Mangikyan represented Cielo in the state court action. Plaintiffs allege that on July 24,

2019, Pamela Bennett gave Defendant Mangikyan permission to speak with her husband, James Bennett, about the state court action. Plaintiffs allege that Mangikyan "sent an email to James Bennett informing him that Cielo was not pursuing" the first cause of action for foreclosure of real property assessment lien. (*Id.* ¶ 58). Plaintiffs allege that Mangikyan "admitted" to the state court that Cielo was not moving forward on its first cause of action. (*Id.*). Plaintiffs allege that Defendants "promise[d] to remove the First Cause of Action [from the state court complaint]." (*Id.* ¶ 60). Plaintiffs further allege that Defendant Judge "swore under oath that Cielo would amend their Complaint to list all accurate damages." (*Id.* ¶ 19). Plaintiffs allege that Defendant Mangikyan told James Bennett that Cielo's second cause of action for damages was viable, even though the second claim had not been authorized by Cielo's Board of Directors.

Plaintiffs allege that Defendants failed to amend the state court complaint. Plaintiffs allege that on September 6, 2019, Pamela Bennett did not appear for the state court trial. Plaintiffs allege that Pamela Bennett did not appear at trial because Plaintiffs relied on Defendants' representations that Cielo would amend the state court complaint and because "no filed [c]omplaint correctly named [Pamela Bennett] as a Defendant." (*Id.* ¶ 60). Plaintiffs allege that their reliance on Defendants' representations in their decision to "skip trial . . . result[ed] in their [d]efault." (*Id.* ¶ 20). Plaintiffs allege that Defendants "asked for and received [ ] entry of [d]efault on their [c]omplaint without any of the promised amendments." (*Id.*).

Plaintiffs allege that on September 16, 2019, Defendants attended an "[e]x [p]arte hearing" to "convince the [state court] to award damages not listed in the [c]omplaint." (*Id.* ¶ 47). Plaintiffs allege that Defendants made "false representation[s]" to the state court of the character, amount, and legal status of the debt and "intentionally misled" the state court by "failing to inform the [c]ourt that the [c]omplaint was no longer valid." (*Id.* ¶ 61). Plaintiffs allege that Defendants obtained a default judgment against Pamela Bennett in the state court action as a result of these false representations. Plaintiffs allege that James

Bennett owned the property at issue along with Pamela Bennett, was required to pay HOA dues, and is therefore also bound by the state court judgment.

Plaintiffs bring claims against Defendants for fraud and for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e(2)(A), (e)(10), and 1692f(1).[1] Plaintiffs seek a declaratory judgment, an injunction preventing Defendants from collecting on the state court judgment, compensatory damages in the amount of $181,307.35, punitive damages in the amount of $543,922.05, and statutory damages.

Defendants did not respond to the FAC. On January 6, 2020, Plaintiffs requested, and the Clerk of the Court entered, Defendants' default. (ECF Nos. 12-19). On January 7, 2020, Defendants filed an untimely Motion to Dismiss the FAC. (ECF No. 11). On January 8, 2020, Defendants filed a Motion to Set Aside Default. (ECF No. 20). On January 21, Plaintiffs filed Oppositions to Defendants' Motions. (ECF No. 21-22).

## II.  MOTION TO SET ASIDE DEFAULT

Defendants request that the Court set aside default. Defendants contend that they "failed to timely file their 12(b)(6) motion due to the mistake, inadvertence, and excusable neglect of Mr. David Mangikyan, who was the attorney entrusted to calculate the due date. Mr. Mangikyan believed the due date to be 21 days, as it is after the original complaint was filed, as opposed to 14 days." (ECF No. 20-1 at 2). Defendants contend that their Motion to Dismiss the FAC is meritorious because "Plaintiffs are asking for a completely unsupportable amount of money in excess of $700,000, based on assertion[s] in the FAC that are contradicted by the supporting documents which Plaintiffs have already introduced into the record, and based on unsupportable legal theories." (*Id.* at 3). Plaintiffs contend

---

[1] Plaintiffs further allege that attorney Defendants Judge and Mangikyan violated the California Rules of Professional Conduct. However, the California Rules of Professional Conduct do not create any private right of action. *See* Cal. Bus. & Prof. Code § 6077 ("For a willful breach of any of [the Rules of Professional Conduct], the State Bar Court has power to discipline attorneys by reproval, public or private, or to recommend to the Supreme Court the suspension from practice for a period not exceeding three years of licensees of the State Bar."); *see Brown v. Grimes*, 192 Cal. App. 4th 265, 285 (2011) (recognizing that the California Rules of Professional Conduct do not create a private right of action).

that that setting aside default is not warranted because Defendants admitted culpability in failing to timely respond to the FAC and fail to present a meritorious defense to the allegations in the FAC.

"Pursuant to Rule 55(c) [of the Federal Rules of Civil Procedure], a district court may set aside the entry of default upon a showing of good cause." *Brandt v. Am. Bankers Ins. Co. of Fl.*, 653 F.3d 1108, 1111 (9th Cir. 2011); *see* Fed. R. Civ. P. 55(c) ("The court may set aside an entry of default for good cause[.]"). Three factors "govern[ ] the inquiry into 'good cause' under Rule 55(c)." *Brandt*, 653 F.3d at 1111 (citing *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010)). "Those factors, which courts consistently refer to as the '*Falk* factors,' are: '(1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default.'" *Id.* (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)). A district court's discretion to set aside entry of default "is especially broad where, as here, it is entry of default that is being set aside, rather than a default judgment." *O'Connor v. State of Nevada*, 27 F.3d 357, 364 (9th Cir. 1994) (quotation omitted). "Where timely relief is sought from a default . . . and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the default so that cases may be decided on their merits." *Id.* (quotation omitted)).

Plaintiffs recently filed the FAC, and the case is in its early stages. There is no indication that setting aside the entry of default will hinder Plaintiffs' ability to pursue their claims. *See TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001) ("To be prejudicial, the setting aside of a [default] must result in greater harm than simply delaying resolution of the case. Rather, 'the standard is whether [plaintiff's] ability to pursue his claim will be hindered.'" (second alteration in original) (quoting *Falk*, 739 F.2d at 463)), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001). The Court finds that Plaintiffs will not be prejudiced by setting aside the entry of default against Defendants. Having reviewed the FAC and the submissions of the parties, the Court finds that Defendants have made a sufficient showing of meritorious defenses.

Finally, to the extent Defendants' failure to timely respond to the FAC was the result of culpable conduct, the Court finds that this factor is outweighed by the other factors favoring setting aside the entry of default. *See Brandt*, 653 F.3d at 1112 ("A district court may exercise its discretion to deny relief to a defaulting defendant based solely upon a finding of defendant's culpability, but need not."). The Court finds that Defendants have demonstrated that good cause exists for setting aside the entry of default.

Defendants' Motion to Set Aside Default (ECF No. 20) is granted.

**III.   MOTION TO DISMISS**

Defendants move to dismiss the FAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiffs fail to state a claim upon which relief can be granted. Defendants contend that "the allegations made in the FAC do not support liability under any section or subsection of the FDCPA and, alternatively, are contradicted [ ] by the documents attached to the [FAC]." (ECF No. 11-1 at 1-2). Defendants contend that Plaintiff James Bennett lacks standing to bring a FDCPA claim because he "has not demonstrated any injury" and "was never the target of any collection." (*Id.* at 4). Defendants contend that Cielo is not a "debt collector" within the meaning of the FDCPA and that Plaintiffs' FDCPA claim based on the alleged lack of Board approval is barred by the one-year statute of limitations. (*Id.*). Defendants contend that Plaintiffs fail to provide a legal basis for their claim that Cielo was required to obtain approval of the Board of Directors to file a suit against Pamela Bennett for damages. Defendants further contend that Defendants contend that the state court determined that damages in Cielo's favor were warranted, and res judicata bars this Court from reconsidering the state court's determination.

Plaintiffs contend that James Bennett has standing under the FDCPA because he was obligated to pay the HOA dues, Defendant Mangikyan misrepresented to James Bennett that Cielo would not proceed with its first cause of action, and James Bennett is the spouse of a "consumer" as defined by the FDCPA. (ECF No. 21 at 7). Plaintiffs contend that Defendant Cielo is a "debt collector" within the meaning of the FDCPA because Cielo is

vicariously liable for the actions of Defendants TJLF, Judge, and Mangikyan, who are "debt collectors." (*Id.* at 9). Plaintiffs contend that Cielo's second cause of action in state court was "illegal" because Cielo had recorded a Notice of Delinquent Assessment, and Defendants violated Cielo's CC&Rs and section 7210 of the California Corporations Code by failing to secure Board approval for the second cause of action. (*Id.* at 11).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state a claim for relief, a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quotation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation omitted).

///

### a. Fair Debt Collection Practices Act Claims

Plaintiffs bring claims against Defendants for violations of the FDCPA, 15 U.S.C. §§ 1692e(2)(a), (10), and 1692f(1), arising from Defendants' alleged attempt to collect HOA fees through the state court lawsuit against Pamela Bennett. The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors . . . ." 15 U.S.C. § 1692(e). "[A]ny debt collector who fails to comply with any provision of [the FDCPA] with respect to any person is liable to such person in an amount equal to the sum of . . . any actual damage sustained by such person as a result of such failure; . . . in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000;" and attorneys' fees and costs. 15 U.S.C. § 1692k.

The Court of Appeals for the Sixth Circuit, and district courts in this circuit, have determined that the language in § 1692k allowing an action by "any person" means that a plaintiff subjected to abusive debt collection by a debt collector attempting to collect a debt from a person other than the plaintiff may bring an action against the debt collector under the sections of the FDCPA not explicitly limited to "consumers," including §§ 1692e and 1692f. *See Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 649-50 (6th Cir. 1994) ("[A]bsent a limitation in the substantive provisions, the ordinary and common understanding of § 1692k is that any aggrieved party may bring an action under §1692e . . . . [T]he purpose of the FDCPA and the legislative history of the act also support this conclusion."); *Kerwin v. Remittance Assistance Corp.*, 559 F. Supp. 2d 1117, 1123 (D. Nev. 2008) ("Persons who do not owe money but are subject to improper practices by debt collectors are covered by the FDCPA."); *Mathis v. Omnium Worldwide*, No. Civ. 04-1614-AA, 2005 U.S. Dist. LEXIS 31973, at *3 (D. Or. Nov. 27, 2005) (the FDCPA "does not limit causes of actions to those brought by a 'consumer,' so long as the alleged conduct was directed at the plaintiff"); *Amelina v. Mfrs. & Traders Trust Co.*, No. 14cv1906-WQH-NLS, 2016 U.S. Dist. LEXIS 96106, at *27 (S.D. Cal. July 21, 2016) (same).

///

///

### i. Plaintiff James Bennett's Standing

As the party invoking federal jurisdiction, Plaintiff James Bennett "bears the burden of establishing the elements of Article III jurisdiction," including standing. *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270 (9th Cir. 2019) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)), *reh'g en banc denied*, 2019 U.S. App. LEXIS 31146 (9th Cir. Oct. 18, 2019); *cert. denied*, *Facebook, Inc. v. Patel*, 2020 U.S. LEXIS 538 (Jan. 21, 2020). "To establish Article III standing, a plaintiff 'must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). In *Spokeo, Inc. v. Robins*,

> the Supreme Court made clear that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." 136 S. Ct. [1540,] 1549 [(2016)]. Even then, "Article III standing requires a concrete injury." *Id.* To establish such an injury, the plaintiff must allege a statutory violation that caused him to suffer some harm that "actually exist[s]" in the world; there must be an injury that is "real" and not "abstract" or merely "procedural." *Id.* at 1548-49 (internal quotation marks omitted). In other words, even when a statute has allegedly been violated, Article III requires such violation to have caused some real—as opposed to purely legal—harm to the plaintiff.

*Robins v. Spokeo*, 867 F.3d 1108, 1112 (9th Cir. 2017) (first alteration in original), *on remand*; *cert. denied*, *Spokeo, Inc. v. Robins*, 2018 U.S. LEXIS 850 (Jan. 22, 2018).

Following the Supreme Court's decision in *Spokeo*, the Court of Appeals for the Ninth Circuit determined that some statutory provisions confer substantive rights for which a plaintiff need not allege additional harm beyond the statutory violation to have standing. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (concluding that "a plaintiff alleging a violation under the [Telephone Consumer Protection Act] 'need not allege any *additional* harm beyond the one Congress has identified,'" to have Article III standing (quoting *Spokeo*, 136 S. Ct. at 1549)); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984 (9th Cir. 2017) (holding that the Video Privacy Protection Act of

1988 protects "substantive" rather than "procedural" rights for which a plaintiff "need not allege any further harm to have standing" (citing *Van Patten*, 847 F.3d at 1043)); *Nayab v. Capital One Bank USA*, 942 F.3d 480, 490 (9th Cir. 2019) (holding that the Fair Credit Reporting Act's provision against obtaining a credit report for an unauthorized purpose is a substantive provision, the violation of which confers standing).

However, courts in this circuit have found that alleging a violation of § 1692e or § 1692f, without also alleging any actual injury, is insufficient to confer Article III standing. *See Davis v. Mandarich Law Grp.*, 790 F. App'x 877, 878 (9th Cir. 2020) (where the plaintiff alleged violations of §§ 1692e and 1692f, remanding to the district court to determine whether the plaintiff had standing and stating, "[F]or Article III purposes, it is not enough for a plaintiff to allege that a defendant has violated a right created by a statute; we must still ascertain whether the plaintiff suffered a concrete injury-in-fact due to the violation . . . . There is a serious question whether [the plaintiff] has adequately alleged an injury in fact . . ." (second alteration in original) (quotation omitted)); *Tourgeman v. Collins Fin. Servs.*, 197 F. Supp. 3d 1205, 1209 (S.D. Cal. 2016) (holding that the plaintiff failed to demonstrate a concrete injury where the defendants sent a letter that allegedly violated § 1692e, but the plaintiff never received the letter, and stating that "[the plaintiff] needs to do more than just point to a statutory violation, he needs to show an actual injury"), *affirmed*, *Tourgeman v. Nelson & Kennard*, 2018 U.S. App. LEXIS 23175 (9th Cir. Aug. 20, 2018); *but see Verdun v. Fid. Creditor Serv.*, No. 14-cv-0036-DHB, 2017 U.S. Dist. LEXIS 39918, at *13 (S.D. Cal. Mar. 20, 2017) (holding that a violation of § 1692e and e(10) "is a substantive violation that gives rise to a concrete injury for purposes of Article III standing"); *Watkins v. Inv. Retrievers, Inc.*, No. 17-cv-01348-KJM-CKD, 2018 U.S. Dist. LEXIS 11717, (E.D. Cal. Jan. 14, 2018) at *10 (explaining that 15 U.S.C. §§ 1692e and 1692f "'affect a plaintiff's concrete interests,'" so the plaintiff need not allege any harm independent of the FDCPA violation to obtain standing (quoting *Eichenberger*, 876 F.3d at 982)).

In this case, Plaintiff James Bennett fails to meet his burden to establish Article III standing under either analysis. The alleged injury in this case is the $81,307.35 judgment against Pamela Bennett. James Bennett fails to allege that he suffered any injury from Defendants' alleged conduct. In addition, as discussed further below, James Bennett fails to allege facts that show that Defendants "use[d] any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, or "use[d] unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Even assuming that an alleged violation of § 1692e or § 1692f is sufficient to confer standing, Plaintiff James Bennett fails to allege facts that demonstrate a violation of either section. The Court concludes that Plaintiff James Bennett fails to meet his burden to establish Article III standing, and the Court lacks subject matter jurisdiction over his claims under the FDCPA.

Defendants' Motion to Dismiss Plaintiff James Bennett's FDCPA claims is granted.

### ii. Defendant Cielo as a "Debt Collector"

"Seeking somewhat to level the playing field between debtors and debt collectors, the FDCPA prohibits debt collectors 'from making false or misleading representations and from engaging in various abusive and unfair practices.'" *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (quoting *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995)). "Because [the FDCPA's] prohibitions apply only to 'debt collector[s]' as defined by the FDCPA, the complaint must plead 'factual content that allows the court to draw the reasonable inference' that [the defendant] is a debt collector." *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1208 (9th Cir. 2013) (second alteration in original) (quoting *Iqbal*, 556 U.S. at 678). Under the FDCPA, the term "debt collector" means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The term "debt collector" does not include a "creditor"— "any person . . . to whom a debt is owed"—unless the creditor "uses any name other than

his own which would indicate that a third person is collecting or attempting to collect [a] debt[ ]." 15 U.S.C. § 1692a(4), (6).

In this case, Plaintiffs allege that the debt at issue—the HOA fees—was owed to Defendant Cielo. The state court complaint and judgment that Plaintiffs attach to the FAC show that Cielo was awarded damages against Pamela Bennett for the unpaid HOA fees. (*See* Ex. 8, ECF No. 9 at 79 ("It is hereby ordered, adjudged, and decreed that Plaintiff, [Cielo] have judgment by default which may be enforced by money judgment against Defendant, Pamela Bennett . . . .")). Plaintiffs do not allege that Cielo "use[d] any name other than [its] own" to collect or attempt to collect the debt owed to it. 15 U.S.C. § 1692a(6). Taking Plaintiffs' allegations as true, and considering the exhibits attached to the FAC, Cielo is a "creditor" and is not a "debt collector" subject to the FDCPA.

Plaintiffs assert that Cielo is vicariously liable for Defendants TJLF, Judge, and Mangikyan's actions as debt collectors. However, various circuit courts, and courts in this district, have held that vicarious liability may only be imposed if both the principal and the agent are debt collectors as defined by the FDCPA. *See Muhammad v. Reese Law Grp., APC*, No. 16cv2513-MMA (BGS), 2017 U.S. Dist. LEXIS 64274, at *12 (S.D. Cal. Apr. 27, 2017) ("[T]he Court is persuaded by the weight of authority restricting FDCPA [vicarious] liability to entities that fit the statutory definition of 'debt collector' as set forth in § 1692a(6)."); *Breidenbach v. Experian*, No. 3:12-cv-1548-GPC-BLM, 2013 U.S. Dist. LEXIS 35807, at *10 (S.D. Cal. Mar. 13, 2013) (dismissing FDCPA claim with prejudice where the plaintiff failed to allege that the defendant "is itself a debt collector as required to impose vicarious liability"); *see also Fox v. Citicorp Credit Servs.*, 15 F.3d 1507, 1513 (9th Cir. 1994) (imposing vicarious liability on a company for acts of its attorney where the company was also a debt collector); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996) (declining to impose vicarious liability on non-debt collectors). Plaintiffs fail to allege facts that support an inference that Cielo is a "debt collector" within the meaning of the FDCPA. Cielo is not vicariously liable for the alleged FDCPA violations of its attorneys.

Defendants' Motion to Dismiss the FDCPA claims against Defendant Cielo is granted.

### iii. Violations of 15 U.S.C. §§ 1692e and 1692f

15 U.S.C. § 1692e makes it unlawful for a debt collector to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Conduct that constitutes "a violation of [§ 1692e]" includes "[t]he false representation of[ ] . . . the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A), and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt . . . ." 15 U.S.C. § 1692e(10). Section 1692f makes it unlawful for a debt collector to "use unfair or unconscionable means to collect or attempt to collect any debt." Conduct that constitutes a "a violation of [§ 1692f]" includes "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).[2] Plaintiffs allege that Defendants violated §§ 1692e(2)(A), (10), and 1692f(1) by making various misrepresentations to Plaintiffs during Cielo's state court action against Pamela Bennett, in order to collect the HOA fee debt. Plaintiffs further allege that Defendants violated §§ 1692e(2)(A), (10), and 1692f(1) by proceeding in state court on the second cause of action for damages in, which was not approved by Cielo's Board of Directors.

---

[2] The Court of Appeals for the Ninth Circuit has not ruled on whether claims under the FDCPA for misrepresentation must meet the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, and district courts in this circuit do not agree on the issue. *See, e.g.*, *Poghosyan v. First Fin. Asset Mgmt.*, No. 1:19-cv-01205-DAD-SAB, 2020 U.S. Dist. LEXIS 14137, at *17-18 (E.D. Cal. Jan. 28, 2020) (stating that the plaintiff's "FDCPA claims are subject to Rule 9(b)'s heightened pleading standards because the conduct that serves as the basis of plaintiff's RFDCPA and FDCPA claims is also the basis of his fraud claims and so sound in fraud." (quotation omitted)); *but see Allgood v. W. Asset Mgmt., Inc.*, No. 12-cv-02094-APG-NJK, 2013 U.S. Dist. LEXIS 170400, at *9 n. 5 (D. Nev. Dec. 2, 2013) ("There is no binding authority holding that Rule 9(b) applies to FDCPA claims. The Court agrees with the substantial body of persuasive authority that claims of FDCPA violations are properly measured under the Rule 8 standard."). The Court need not resolve this issue, because Plaintiffs fail to state a FDCPA claim under the more lenient Rule 8 standard.

### 1. Misrepresentations About Cielo's Foreclosure Claim

Plaintiffs allege that after Bank of America foreclosed on Plaintiffs' property in July 2012, Defendant Mangikyan "sent an email to James Bennett informing him that Cielo was not pursuing their First Cause of Action [for foreclosure of real property assessment lien] because there is no lien and no property." (ECF No. 9 ¶ 58). Plaintiffs allege that Mangikyan "admitted" at a state court hearing that Cielo was no longer pursing its first cause of action. (*Id.*). Plaintiffs allege that Mangikyan's representations were false because Cielo failed to amend the state court complaint to remove the foreclosure cause of action and obtained a default judgment on the entire state court complaint, including the foreclosure cause of action.

Plaintiffs attach the state court complaint, the judgment against Pamela Bennett, and transcripts of the state court proceedings to the FAC. In the state court complaint, Cielo brought claims against Pamela "Bennet," later amended to Pamela Bennett, for foreclosure of real property assessment lien and damages for breach of covenant. (Ex. 1, ECF No. 9 at 47; Ex. 7, ECF No. 9 at 75). On the foreclosure claim, Cielo sought "a decree that [Pamela Bennett's property] is encumbered by a mortgage in favor of [Cielo] in the amount of $10,429.93;" a "decree that the equitable mortgage . . . be foreclosed;" the proceeds of the foreclosure sale; and "any deficiency between the sales price and the total amount due." (Ex. 1, ECF No. 9 at 49-50). On the damages claim, Cielo sought "damages in the principal sum of $10,429.93, with interest thereon at the rate of 12.00 percent per annum from December 14, 2009, plus reasonable attorney's fees and costs according to proof . . . ." (*Id.* at 50).

The state court transcripts that Plaintiffs attach to the FAC show that, on August 9, 2019, the state court held a trial readiness conference. (*See* Ex. 2, ECF No. 9 at 54-55). Mangikyan informed the state court that, due to the foreclosure, Cielo was "moving forward [only] on cause of action number two for money judgment for amounts owing at the time . . . almost [$]50,000." (*Id.* at 56-57). James Bennett appeared at the trial readiness conference. The judge explained that James Bennett was not a party to the state court

action, that James Bennett could not represent his wife, and that the court would enter default judgment against Pamela Bennett if she failed to appear at the re-scheduled trial readiness conference or trial call.

Pamela Bennett did not appear for the re-scheduled trial readiness conference or for trial call, and the state court entered default judgment against her. The state court judgment that Plaintiffs attach to the FAC shows that the state court awarded Cielo a "money judgment" of "[p]rincipal from June 1, 2011 through July 31, 2012 in the amount of $32,836,14;" "[p]re-judgment interest in the amount of $27,018.16;" "[a]ttorney's fees in the amount of $19,710.00;" and "costs and disbursements in the amount of $1,743.05" for a "total amount of $81,307.35." (Ex. 8, ECF No. 9 at 79). Cielo recovered against Pamela Bennett only on its second cause of action for damages, not on its first cause of action for foreclosure. Taking Plaintiffs' allegations as true, and upon consideration of the exhibits Plaintiffs attach to the FAC, Plaintiffs fail to allege facts that show any Defendant made a misrepresentation regarding Cielo's foreclosure cause of action, or used deceptive, unfair, or unconscionable means regarding Cielo's foreclosure cause of action, to collect the HOA debt.

### 2.  Misrepresentations About Cielo's Damages

Plaintiffs allege that Defendant Judge swore under penalty of perjury in the state court complaint that Cielo would amend the complaint to state the full amount of damages. Plaintiffs allege that this representation was false because Cielo never amended the complaint, and Cielo obtained a damage award against Pamela Bennett greater that the $50,000 that Judge told the state court Cielo sought.

In the state court complaint that Plaintiffs attach to the FAC, Cielo alleged that Pamela Bennett continued to fail to pay HOA fees and that "additional . . . assessments will be levied prior to the entry of judgment [ ] in amounts that cannot be presently ascertained. When the full amount is finally determined, [Cielo] will amend this complaint accordingly or according to proof." (Ex. 1, ECF No. 9 at 48). The transcript from the state court trial call that Plaintiffs attach to the FAC shows that the state court judge stated that

she would set "a default prove up hearing" when Pamela Bennett failed to appear for the state court trial call. (Ex. 11, ECF No. 9 at 98). Defendant Judge asked the state court judge if Cielo could instead "submit on 585(b)."[3] (*Id.*). The state court judge asked Defendant Judge how much money Cielo was requesting, and attorney Judge responded, "$32,000 plus fees plus interests plus costs . . . . Approximately [$]50,000." (*Id.* at 98-99). The state court judge determined that the court did not need a prove up hearing to ascertain the amount of damages, stating that "if it's under [$]100[,000], you could just submit the [585(b)] paperwork because . . . it's a certain type of action." (*Id.* at 100).

The state court judgment that Plaintiffs attach to the FAC shows that, on September 16, 2019, the state court entered judgment in Cielo's favor, finding that "[e]vidence was introduced on behalf of Plaintiff, [Cielo] under California Code of Civil Procedure Section 585(d), and from proof made to the satisfaction of the Court, the Court finds that all of the allegations of the complaint are true and that the relief prayed for should be granted." (Ex. 8, ECF No. 9 at 78). The state court awarded Cielo a "money judgment" of "[p]rincipal from June 1, 2011 through July 31, 2012 in the amount of $32,836,14;" "[p]re-judgment interest in the amount of $27,018.16;" "[a]ttorney's fees in the amount of $19,710.00;" and "costs and disbursements in the amount of $1,743.05" for a "total amount of $81,307.35." (*Id.* at 79). Taking Plaintiffs' allegations as true, and upon consideration of the exhibits Plaintiffs attach to the FAC, Plaintiffs fail to allege facts that show any Defendant made a misrepresentation regarding Cielo's request and judgment for damages, or used deceptive, unfair, or unconscionable means regarding Cielo's damages claim, to collect the HOA debt.

///

---

[3] Section 585(b) of the California Code of Civil Procedure provides that after default is entered against a defendant, "[t]he plaintiff thereafter may apply to the court for the relief demanded in the complaint. The court shall hear the evidence offered by the plaintiff, and shall render judgment in the plaintiff's favor for that relief, not exceeding the amount stated in the complaint . . . as appears by the evidence to be just." Section 585(d) allows the court to "permit the use of affidavits, in lieu of personal testimony, as to all or any part of the evidence or proof requires or permitted to be offered, received, or heard in [a section 585(b)] case[ ]."

### 3. HOA Board Approval for Cielo's Damages Claim

Plaintiffs allege that Cielo's second cause of action in the state court complaint for damages was unlawfully brought because Cielo's Board of Directors never approved an action against Pamela Bennett for damages. Plaintiffs allege that Defendants misrepresented to the state court that Cielo's damages claim was viable, leading to unlawful recovery of damages. Plaintiffs allege that Defendant Mangikyan misrepresented to Plaintiffs that Cielo's second cause of action was valid.

Section 1692k(d) of the FDCPA provides that a private civil action "may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs." "The FDCPA limitations period begins to run on the date the alleged FDCPA violation actually happened," not "on the date an alleged FDCPA violation is discovered." *Rotkiske v. Klemm*, 140 S. Ct. 355, 360-61 (2019). Cielo filed the state court complaint, containing the second cause of action for damages, on December 28, 2009. (Ex. 1, ECF No. 9 at 47). Plaintiffs' claim that Defendants' filed the second cause of action unlawfully in violation of the FDCPA is time-barred. Further, the state court already determined that Defendants "pro[ved] [ ] to the satisfaction of the Court . . . that the relief prayed for should be granted." (Ex. 8, ECF No. 9 at 78).

Taking Plaintiffs' allegations as true, and upon consideration of the exhibits Plaintiffs attach to the FAC, Plaintiffs fail to allege facts that show that any Defendant "collect[ed] [ ] any amount" that was not "permitted by law." 15 U.S.C. § 1692f(1). Plaintiffs fail to allege any conduct by Defendants that constitutes a violation of the FDCPA. Defendants' Motion to Dismiss Plaintiffs' FDCPA claims is granted.

### b. State Law Fraud Claim

Plaintiffs' remaining fraud claim arises under California state law. The federal supplemental jurisdiction statute provides, "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that

17

19-cv-2131-WQH-BLM

they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "The district courts may decline to exercise supplemental jurisdiction" for a number of reasons, including if "the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). "Depending on a host of factors, then—including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims—district courts may decline to exercise jurisdiction over supplemental state law claims." *Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).

"While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the [*United Mine Workers of America v.*] *Gibbs*[,] [383 U.S. 715 (1966),] values of economy, convenience, fairness, and comity." *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997) (quotation omitted). "'[I]n the usual case in which federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims.'" *Schneider v. TRW, Inc.*, 938 F.2d 986, 993 (9th Cir. 1991) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1970)).

The Court has dismissed Plaintiffs' federal claims. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claim.

Defendants' Motion to Dismiss the FAC is granted. Plaintiffs' FAC is dismissed without prejudice.

### IV.   CONCLUSION

IT IS HEREBY ORDERED that Defendants' Motion to Set Aside Default (ECF No. 20) is granted.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 11) is granted. Plaintiffs' FAC is dismissed without prejudice. No later than

1 | thirty (30) days from the date of this Order, Plaintiffs may file a motion for leave to amend
2 | pursuant to Civil Local Rules 7.1 and 15.1(c).

Dated: May 4, 2020

*William Q. Hayes*
Hon. William Q. Hayes
United States District Court